**2015-1775**

# United States Court of Appeals
# for the Federal Circuit

---

**BEST KEY TEXTILES CO., LTD.,**

Plaintiff-Appellant,

***v.***

**UNITED STATES,**

Defendant-Appellee.

---

Appeal from the U.S. Court of International Trade, No. 13-cv-367,
Senior Judge R. Kenton Musgrave

---

**PRINCIPAL BRIEF FOR APPELLANT,
BEST KEY TEXTILES CO., LTD.
(CORRECTED)**

---

John M. Peterson
 *Counsel of Record*
NEVILLE PETERSON LLP
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

September 1, 2015

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

BEST KEY TEXTILES CO., LTD.   v.  UNITED STATES

No. 2015-1775

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Best Key Textiles Co., Ltd.    certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Best Key Textiles Co., Ltd.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

4.  ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

NEVILLE PETERSON LLP (John M. Peterson, Maria E. Celis, Russell A. Semmel, Richard F. O'Neill, Elyssa R. Emsellem), George W. Thompson

June 24, 2015
Date

/s/ John M. Peterson
Signature of counsel

John M. Peterson
Printed name of counsel

Please Note: All questions must be answered
cc: _____

**FORM 19.   Certificate of Compliance With Rule 32(a)**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑     The brief contains [          9240          ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐     The brief uses a monospaced typeface and contains [                    ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑     The brief has been prepared in a proportionally spaced typeface using [          *Microsoft Office Word 2007*          ] in [          *Times New Roman (size 14)*          ], or

☐     The brief has been prepared in a monospaced typeface using [                    ] with [ [                    ].

/s/ John M. Peterson
_____
(Signature of Attorney)

John M. Peterson
_____
(Name of Attorney)

Counsel for Best Key Textiles Co., Ltd.
_____
(State whether representing appellant, appellee, etc.)

September 1, 2015
_____
(Date)

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTEREST ...................................................... i

CERTIFICATE OF COMPLIANCE ................................................ ii

TABLE OF AUTHORITIES ........................................................ iii

STATEMENT OF RELATED CASES............................................ vii

STATEMENT OF JURISDICTION .................................................1

STATEMENT OF THE ISSUE ........................................................2

STATEMENT OF THE CASE ..........................................................2

STANDARD OF REVIEW ............................................................13

ARGUMENT ...............................................................................15

I.     The "Mandate Rule" Should Not Be Interpreted as Precluding the CIT from Considering the Question of Transfer .................................17

II.    The CIT Abused Its Discretion by Refusing to Transfer This Case to District Court. ...................................................................24

III.   The CIT Erred in Finding That the Proposed Transferee Court Would Not Have Jurisdiction over This Action. ........................................28

IV.    Transfer of This Case to District Court Would Be in the Interests of Justice. ...............................................................................33

CONCLUSION ...........................................................................37

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)...................................... 32

*Aventis Pharma S.A. v. Hospira*, 637 F.3d 1341 (Fed. Cir. 2014) ........................ 21

*Bailey v. Dart Container Corp.*, 292 F.3d 1360 (Fed. Cir. 2002) ....................16, 21

*Best Key Textiles Co. v. United States*, 777 F.3d 1356 (Fed. Cir. 2015) ............2, 13

PAGE(S)

*Best Key Textiles Co. v. United States*, Slip Op. 13-148 (Ct. Int'l Trade Dec. 13, 2013) ............................................................................................... 12, 20

*Best Key Textiles Co. v. United States*, Slip Op. 14-22 (Ct. Int'l Trade Feb. 25, 2013) ............................................................................................... 12, 20

*Boultinghouse v. Lappin*, 816 F. Supp. 2d 107 (D.D.C. 2011) ....................... 15, 25

*Britell v. United States,* 318 F.3d 70 (1st Cir. 2003) ............................................. 34

*Butler v. United States*, 30 C.I.T. 832 (2006) ...................................... 18, 31, 34, 35

*Byron v. Clay*, 867 F.2d 1049 (7th Cir. 1989) ....................................................... 21

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ...................... 23

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) ........................ 14

*Davis Walker Corp. v. Blumenthal*, 460 F. Supp. 283 (D.D.C. 1978) ................... 31

*Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004) .............................................. 30

*Doe v. United States*, 372 F.3d 1308 (Fed. Cir. 2004) .......................................... 30

*Galloway Farms v. United States*, 834 F.2d 998 (Fed. Cir. 1987) ........................ 36

*Gould, Inc. v. United States*, 67 F.3d 925 (Fed. Cir. 1995) .................................. 27

*Horizon Lines LLC v. United States*, 429 F. Supp. 2d 92 (D.D.C. 2006) .............. 31

*In re McCauley*, 814 F.2d 1350 (9th Cir. 1987) .................................................... 15

*In re Sims*, 994 F.2d 210 (5th Cir. 1993) ............................................................. 20

*Int'l Custom Prods. Inc. v. United States*, 748 F.3d 1182 (Fed. Cir. 2013)............. 9

*ITT Corp. v. IBEW*, 419 U.S. 428 (1975) ............................................................. 30

*Jackson v. L&F Martin Landscape*, 421 Fed. App'x 482 (6th Cir. 2009)............. 24

*Legal Aid Soc'y v. Brennan*, 608 F.2d 1319 (9th Cir. 1979) ................................ 32

*Luna v. United States*, 454 F.3d 631 (7th Cir. 2006) ............................................ 21

*Manville Sales Corp. v. Paramount Sys.*, 917 F.2d 544 (Fed. Cir. 1990).............. 14

*Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344 (Fed. Cir. 2011)............. 21

*Miller v. Hambrick*, 905 F.2d 259 (9th Cir. 1990) ..................................... 15, 16, 24

*Millican v. United* States, No. 05-1330, 2006 U.S. Claims LEXIS 673 (Aug. 24, 2006) ............................................................................................................ 31

PAGE(S)

*Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921 (7th Cir. 2013) ................................................................. 30

*Motions Sys. Corp. v. Bush*, 437 F.3d 1356 (Fed. Cir. 2006)............................... 12

*Nat'l Union Fire Ins. Co. v. West Lake Acad.*, 548 F.3d 8 (1st Cir. 2008)............ 21

*Newton Lake Estates v. United States*, No. 97-5137, 1998 U.S. App. LEXIS 7329 (Fed. Cir. Apr. 10, 1988) ........................................ 13, 14, 16, 22

*Phillips v. Seiter*, 173 F.3d 609 (7th Cir. 1999)............................................27, 35

*Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985) ........................................... 26

*Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatl.*, 400 U.S. 62 (1970)................................................................... 30

*PRP Trading Corp. v. United States*, 885 F. Supp. 2d 1312 (Ct. Int'l Trade 2012)................................................................... 34

*Reilly v. United States*, 93 Fed. Cl. 643 (2010)................................................... 37

*Retamal v. United States*, 439 F.3d 1372 (Fed. Cir. 2006) ................................. 31

*Saddleback Valley Cmty. Church v. El Toro Materials Co.*, 504 F.3d 978 (9th Cir. 2007)................................................................... 20

*Schick v. United States*, 31 C.I.T. 2017 (2007).................................................... 34

*Schick v. United States*, 554 F.3d 992 (Fed. Cir. 2009) ...................................18, 31

*Sodexho Marriott Mgmt. v. United States*, 61 Fed. Cl. 229 (2004) ...................... 27

*Sorcia v. Holder*, 643 F.3d 117 (4th Cir. 2011)...............................................15, 25

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939)........................................... 26

*Taylor v. PTO*, 385 Fed. App'x 980 (Fed. Cir. 2010)........................ 16, 18, 19, 22

*Tex. Peanut Farmers v. United States*, 409 F.3d 1370 (Fed. Cir. 2005)............... 35

*Tronzo v. Biomet, Inc.*, 236 F.3d 1342 (Fed. Cir. 2001) ..................................... 23

*United States v. Gama-Bastidas*, 222 F.3d 779 (10th Cir. 2000) ....................26, 27

*United States v. Mead Co.*, 533 U.S. 218 (2001)..............................................3, 29

*United States v. Rockwell Automation Inc.*, 30 C.I.T. 1552 (2006)........................ 9

*United States v. U.S. Shoe Co.*, 523 U.S. 360 (1998) .....................................17, 33

*Wilson v. A.H. Belo Corp.*, 87 F.3d 393 (9th Cir. 1996) ....................................... 30

PAGE(S)

*Young v. United States*, 88 Fed. Cl. 283 (2009)...................................................... 36

*Zoltek Corp. v. United States*, 672 F.2d 1309 (Fed. Cir. 2012)............................ 14

**Statutes & Session Laws**

5 U.S.C. § 551 ...................................................................................................2, 29

5 U.S.C. § 554 ......................................................................................................... 29

5 U.S.C. § 558 ........................................................................................................... 9

5 U.S.C. § 706 ......................................................................................................... 32

19 U.S.C. § 1484..................................................................................................... 9

19 U.S.C. § 1502.................................................................................................5, 32

19 U.S.C. § 1625....................................................................................................passim

28 U.S.C. § 1295..................................................................................................... 1

28 U.S.C. § 1331..................................................................................................... 32

28 U.S.C. § 1581..................................................................................... 2, 3, 12, 32

28 U.S.C. § 1631..................................................................................................passim

28 U.S.C. § 2344.................................................................................................35, 36

28 U.S.C. § 2636..................................................................................................... 35

28 U.S.C. § 2640..................................................................................................... 3

**Regulations & Federal Register Publications**

19 C.F.R. § 177.1..................................................................................................... 6

19 C.F.R. § 177.9.................................................................................................6, 30

**Administrative Rulings & Materials**

*Customs Headquarters Ruling 968010* (June 28, 2006) .......................................... 8

*Customs Headquarters Ruling H202560* (September 17, 2013) ........................... 11

*Customs Headquarters Ruling H243328* (Aug. 19, 2013) ..................................... 7

*Customs Headquarters Ruling H260751* (Feb. 23, 2015)...................................... 7

*Customs Headquarters Ruling H263979* (May 29, 2015) ..................................... 8

*Customs Headquarters Ruling H264394* (May 22, 2015) ..................................... 7

*N.Y. Customs Ruling G80924* (Aug. 15, 2000)...................................................... 8

*N.Y. Customs Ruling J87691* (Aug. 20, 2003)...................................................... 7

PAGE(S)

*N.Y. Customs Ruling N132156* (Dec. 12, 2010) ..................................................... 8

*N.Y. Customs Ruling N187601* (Oct. 25, 2011) .................................................... 10

*N.Y. Customs Ruling N264708* (June 1, 2015)....................................................... 8

*N.Y. Customs Ruling N265037* (June 23, 2015)..................................................... 8

*N.Y. Customs Ruling N265250* (June 25, 2015)..................................................... 7

*N.Y. Customs Ruling N265267* (July 1, 2015) ...................................................... 7

**Miscellaneous**

Anne B. Poulin, *Prosecution Use of Estoppel and Related Doctrines in
  Criminal Cases: Promoting Consistency, Tolerating Inconsistency*, 64
  Rutgers L. Rev. 409 (2012) .............................................................................. 25

Black's Law Dictionary 1304 (6th ed. 1990)......................................................... 28

Webster's Third New Int'l Dictionary (1993) ....................................................... 34

Wm. J. Moore, *Moore's Federal Practice* (3d ed. 1999)...................................... 33

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the U.S. Court of Appeals for the Federal

Circuit, counsel for Appellant, Best Key Textiles Co., Ltd. ("Best Key"), hereby

states that one previous appeal from this action was before this Court. In that case,

*Best Key Textiles Co. v. United States*, 777 F.3d 1356 (Fed. Cir. 2015), this Court

found that the U.S. Court of International Trade (CIT) lacked subject matter juris-

diction to entertain this Administrative Procedure Act (APA) challenge to a final

decision by U.S. Customs and Border Protection (CBP or "Customs"), made pur-

suant to section 625(c) of the Tariff Act of 1930, 19 U.S.C. § 1625(c), which re-

voked a favorable ruling concerning the tariff classification of Best Key's unique metalized yarn product.

After this Court remanded the action to the CIT with instructions to dismiss for lack of subject matter jurisdiction, Best Key moved that court, pursuant to 28 U.S.C. § 1631, to transfer the case to the Federal District Court for the District of Columbia, which has subject matter jurisdiction to hear the case. The CIT declined to transfer the case and this appeal followed. The CIT decision appealed herein indirectly raised the issue of whether the question of transfer is more appropriately handled by a motion to recall the mandate issued by this Court in that appeal. As the question of how best to proceed in these circumstances appears to be an issue of first impression for this Circuit, Best Key has simultaneously herewith filed a motion for recall of that mandate, should this Court consider that the better procedural avenue for considering the issue of transfer.

No other appeal known to Best Key to be pending before this Court will directly affect or be directly affected by this Court's decision in this appeal.

**2015-1775**

# United States Court of Appeals
# for the Federal Circuit

---

**BEST KEY TEXTILES CO., LTD.,**

Plaintiff-Appellant,

***v.***

**UNITED STATES,**

Defendant-Appellee.

---

Appeal from the U.S. Court of International Trade, No. 13-cv-367,
Senior Judge R. Kenton Musgrave

---

**PRINCIPAL BRIEF FOR APPELLANT,
BEST KEY TEXTILES CO., LTD.
(CORRECTED)**

---

## STATEMENT OF JURISDICTION

Appellant, Best Key Textiles Co., Ltd. ("Best Key"), appeals from *Best Key Textiles Co. v. United States*, slip op. 15-63 (App. 1a–5a) (the "Opinion"), a final decision of the U.S. Court of International Trade (CIT) dated June 18, 2015. Best Key timely filed a notice of appeal on June 24, 2015. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(5).

## STATEMENT OF THE ISSUE

The issue presented is whether the CIT abused its discretion in refusing to transfer this Administrative Procedure Act (APA) challenge to a final agency decision to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1631.

## STATEMENT OF THE CASE

Best Key commenced this litigation under the APA, 5 U.S.C. § 551 *et seq.*, to seek judicial review of a decision by U.S. Customs and Border Protection (CBP or "Customs") rendered pursuant to section 625(c) of the Tariff Act of 1930, 19 U.S.C. § 1625(c), to revoke a tariff classification ruling issued to Best Key.  In *Best Key Textiles Co. v. United States* ("*Best Key III*"), 777 F.3d 1356 (Fed. Cir. 2015), this Court held that the CIT lacked subject matter jurisdiction to entertain this APA challenge under its 28 U.S.C. § 1581(i) "residual" jurisdiction.  The CIT's jurisdiction, this Court held, was limited to entertaining, pursuant to § 1581(a), challenges from importers whose protests against the assessment of duty on specific entries of merchandise had been denied.  This Court remanded the action to the CIT with instructions for that court to dismiss for want of subject matter jurisdiction.

Following remand, Best Key moved the CIT, pursuant to 28 U.S.C. § 1631, to transfer the action to federal district court, which clearly has subject matter jurisdiction to entertain all APA claims not committed by law to the jurisdiction of other courts. In moving for transfer, Best Key noted that a protest action brought under § 1581(a) would never result in judicial review of the revocation of Best Key's ruling, as a protest action would (1) involve a different plaintiff (not Best Key, but an importer of apparel made with Best Key's metalized yarn); (2) focus on a different agency decision (liquidation of an entry) rather than the revocation of the ruling; (3) be decided on the basis of a record made *de novo* before the court, 28 U.S.C. § 2640(a)(1), rather than the agency record, as is required in APA challenges; (4) not apply the standard of review that the APA applies in reviewing agency rulings; and (5) never result in direct review of a customs ruling, as the U.S. Supreme Court has clearly delineated that the only role of a customs ruling in a protest action is as a potential source of non-binding judicial deference, *United States v. Mead Co.*, 533 U.S. 218 (2001).

The CIT declined to transfer the case to the district court. While acknowledging that "[t]ransfer pursuant to 28 U.S.C. § 1631 is warranted if (a) transfer is 'in the interest of justice,' and (b) the action 'could have been brought' in the District Court for the District of Columbia," App. 2a (quoting *Butler v. United States*, 30 C.I.T. 832, 837 (2006)), the CIT provided three reasons for refusing to transfer,

and commented on Best Key's standing under the APA.  First, citing the so-called "mandate rule," the CIT noted that this Court had remanded the prior appeal with instructions to dismiss the case for lack of subject matter jurisdiction, implying that the CIT was, thus, without power to consider the question of transfer under § 1631. *Id.* at 4a.  Second, the CIT surmised—without citation to any aspect of this Court's prior opinion—that this Court, in issuing its mandate in *Best Key III*, might have implicitly[1] contemplated transfer and decided against doing so.  *Ibid.* ("this court may not presume that the appellate court did not implicitly consider the question of transfer on appeal when it explicitly remanded only 'with instructions to dismiss the case'").  Third, the CIT questioned whether the district court would have subject matter jurisdiction of this APA appeal because, despite having just been told by this Court that it *lacked* subject matter jurisdiction of this action, it held that the CIT "is the court vested with *exclusive* jurisdiction" over something it termed "the *res* of the type of matter about which the plaintiff fundamentally complains, namely, the issuance of a pre-importation classification ruling and the proper tariff classification of imported goods," citing § 1581(h).  *Id.* at 4a–5a.

Finally, the court surmised that the injury of which Best Key complains stems from the revocation of its customs ruling—which consisted of hundreds of millions of dollars in lost business and revenue—"is beyond the type of harm en-

---

[1] This Court made no explicit consideration of transfer in its prior opinion.

compassed by the APA claim that the plaintiff would assert, which can theoretically only find expression via 28 U.S.C. § 1581(i), because 'engaging in foreign commerce is not a fundamental right protected by notions of substantive due process.'" *Id.* at 5a (quoting *NEC Corp. v. United States*, 151 F.3d 1361, 1369 (1998)).  This observation bizarrely suggests that Best Key's claims can be heard under § 1581(i), even though this Court had just ruled to the contrary.

In addition to being an incorrect application of the court's transfer authority, the decision below, if upheld by this Court, would effectively hold that customs rulings issued pursuant to section 502 of the Tariff Act of 1930, 19 U.S.C. § 1502, and its implementing regulations, 19 C.F.R. pt. 177, as well as Customs decisions to revoke or modify those rulings pursuant to the "notice and comment" proceedings set forth in 19 U.S.C. § 1625(c), are not subject to judicial review under the APA.

## STATEMENT OF FACTS

19 U.S.C. § 1502 authorizes the Secretary of the Treasury to provide for the issuance of, *inter alia*, rulings prior to the importation of goods, and specifies that rulings so issued shall be binding on Customs officers.[2]  Pursuant to this statutory

---

[2] Section 502, "Regulations for appraisement and classification," provides—

directive, Customs has issued regulations that provide for the issuance of rulings, and specify that rulings, once issued, are binding on all officers of the customs. *See* 19 C.F.R. § 177.9(a) ("[a] ruling letter issued by the Customs Service under the provisions of this part represents the official position of the Customs Service with respect to the particular transaction or issue described therein and is binding on all Customs Service personnel in accordance with the provisions of this section until modified or revoked").

Customs' regulations provide that a ruling may be sought by "any person who, as an importer or exporter of merchandise, *or otherwise*, has a direct and demonstrable interest in the question or questions presented in the ruling request, or by the authorized agent of such person." *Id.* § 177.1(c) (emphasis added). A "per-

---

(a) *Powers of Secretary of the Treasury.* The Secretary of the Treasury shall establish and promulgate such rules and regulations not inconsistent with the law (including regulations establishing procedures for the issuance of binding rulings prior to the entry of the merchandise concerned), and may disseminate such information as may be necessary to secure a just, impartial, and uniform appraisement of imported merchandise and the classification and assessment of duties thereon at the various ports of entry. The Secretary may direct any customs officer to go from one port of entry to another for the purpose of appraising or classifying or assisting in appraising or classifying merchandise imported at any port, and may direct any customs officer at any port to review entries of merchandise filed at any other port.

(b) *Duties of customs officers.* It shall be the duty of all officers of the customs to execute and carry into effect all instructions of the Secretary of the Treasury relative to the execution of the revenue laws; and in case any difficulty arises as to the true construction or meaning of any part of the revenue laws, the decision of the Secretary shall be binding upon all officers of the customs.

son" is defined as "an individual, corporation, partnership, association, or other entity or group." *Id.*

Customs has issued over 187,000 rulings under this authority,[3] dealing with such diverse matters as the tariff classification[4] and appraisement[5] of imported merchandise, the classification[6] and appraisement[7] of inputs used in making imported merchandise, the eligibility of goods for duty free or reduced duty treatment under various free trade agreements[8] and statutory programs,[9] the admissibility of

---

[3] *See* http://rulings.cbp.gov/ (last accessed Aug. 2, 2015), advising that the Customs Ruling Online Search Service (CROSS) database has 187,690 digitally "searchable" rulings. In addition, there are an unknown but large number of older rulings that are not contained in this database.

[4] *See, e.g.*, *N.Y. Customs Ruling N265250* (June 25, 2015) (classifying DVD cases and shopping bags).

[5] *See, e.g.*, *Customs Headquarters Ruling H264394* (May 22, 2015) (appraising imported aeronautical equipment made with benefit of dutiable "assists").

[6] *See, e.g.*, *N.Y. Customs Ruling J87691* (Aug. 20, 2003) (classifying foreign-made comforter shell for use in an imported North American Free Trade Agreement (NAFTA)-eligible comforter).

[7] *See, e.g.*, *Customs Headquarters Ruling H260751* (Feb. 23, 2015) (determining "regional value content" of parts to be incorporated abroad into imported motor vehicles for NAFTA purposes).

[8] *See, e.g.*, *Customs Headquarters Ruling H243328* (Aug. 19, 2013) (determining eligibility of goods for duty free entry under Korea-United States Free Trade Agreement).

[9] *See, e.g.*, *N.Y. Customs Ruling N265267* (July 1, 2015) (determining eligibility of products assembled abroad with U.S.-origin materials for reduced dutiable value under the tariff schedule)

merchandise,[10] country of origin for preferential and nonpreferential purposes,[11] and a wide range of other issues. Customs has issued rulings not only to importers and exporters of merchandise, but also to foreign manufacturers,[12] domestic and foreign trade associations,[13] foreign embassies,[14] chambers of commerce,[15] and many others.

While no one has a right to engage in international trade, the vast majority of rulings deal with situations where international trade is authorized, and specify terms and conditions under which the ruling holder may conduct such trade. The ruling holder is entitled to the treatment specified in the ruling, regardless of contrary opinions of individual customs officers or contrary determinations rendered to others. At the same time, the holder is expected to enter merchandise in accordance with the treatment specified in the ruling, as a matter of exercising its statuto-

---

[10] *See, e.g.*, *Customs Headquarters Ruling H263979* (May 29, 2015) (holding certain knives inadmissible).

[11] *See, e.g.*, *N.Y. Customs Ruling N265037* (June 23, 2015) (origin ruling issued to foreign manufacturer).

[12] *See, e.g.*, *N.Y. Customs Ruling N264708* (June 1, 2015) (issued to South Korean manufacturer).

[13] *See, e.g.*, *Customs Headquarters Ruling 968010* (June 28, 2006) (issued to recycled apparel trade association).

[14] *See, e.g.*, *N.Y. Customs Ruling G80924* (Aug. 15, 2000) (issued to Embassy of France).

[15] *See, e.g.*, *N.Y. Customs Ruling N132156* (Dec. 12, 2010) (issued to German-American Chamber of Commerce)

ry duty under 19 U.S.C. § 1484 to use "reasonable care" in the entry of merchandise.[16]

Rulings confer important procedural rights on holders and cannot be revoked without notice and the opportunity for comment.  In this regard, they are comparable to "licenses" under the APA.[17]  Recognizing the importance of rulings to those who hold them, Congress in 1993 amended 19 U.S.C. § 1625(c) to provide that Customs may not modify or revoke a ruling without first providing the holder with notice and an opportunity to comment, must publish notice of the final agency determination, and extend a sixty-day "grace period" before any modification or revocation adverse to the holder may be applied to the holder's merchandise.  This Court has recognized that Customs actions taken without following the requirements of § 1625(c) are invalid.  *See Int'l Custom Prods. Inc. v. United States*, 748 F.3d 1182 (Fed. Cir. 2013).

Best Key, a yarn manufacturer headquartered in Hong Kong, invented a revolutionary new form of "metalized yarn" in which metal nanoparticles are blended into a polyester slurry, which is then extruded from a spinneret to form polyester

---

[16] *See, e.g.*, *United States v. Rockwell Automation Inc.*, 30 C.I.T. 1552, 1555 (2006).

[17] *See* 5 U.S.C. § 558(c). While no one has an unbridled right to engage in international trade, the government frequently grants import "licenses" protecting a right to engage in certain forms of import trade. Best Key submits that a Customs ruling effectively constitutes a license for purposes of the APA. However, it is unnecessary for the Court to address that issue in order to resolve this appeal.

monofilaments. App. 17a. The product ("Best Key Metalized Yarn" or "BKMY") has properties superior to traditional Lurex metalized yarns, which are made by sandwiching larger metal particles between two sheets of plastic film, and slitting the sandwich to "yarn" widths. Unlike Lurex, BKMY can be easily woven or knit to make fabrics, can be dyed and printed, and has a texture soft enough to be worn against the skin.

The metals in BKMY impart antimicrobial properties to fabrics, as well as a high degree of resistance to ultraviolet radiation. Manufacturers of garments imported into the United States stand to achieve significant financial benefits from using BKMY, since many garments made in chief weight of "metalized yarns" are considered to be composed of "other fabrics" (rather than, for example, man-made fibers) and therefore attract substantially lower rates of duty under the Harmonized Tariff Schedule of the United States (HTSUS) than garments made from non-metalized yarns.

Seeking to commercialize its product, Best Key sought a ruling from CBP concerning whether BKMY was properly considered a "metalized" yarn of a kind classified under HTSUS heading 5605. In *N.Y. Customs Ruling N187601* (Oct. 25, 2011) (the "Yarn Ruling") (App. 17a–18a), CBP ruled that BKMY is indeed a metalized yarn, classifiable under HTSUS subheading 5605.90. Relying on that

ruling, Best Key began selling BKMY to fabric producers and garment makers who served the U.S. market.

When CBP realized that BKMY was being used to manufacture garments that carried a lower rate of duty, the agency initiated proceedings under § 1625(c) to revoke the ruling and to hold that BKMY was *not* a metalized yarn for tariff classification purposes.[18]  On September 17, 2013, CBP revoked the Yarn Ruling and replaced it with *Customs Headquarters Ruling H202560* (the "Revocation Ruling") (App. 19a–30a), which held that BKMY is *not* a metalized yarn for tariff classification purposes.

Best Key thereafter brought this suit in the CIT, seeking judicial review of the Revocation Ruling, and the process by which it was adopted under the APA.

---

[18] As noted in Best Key's previous appeal, the § 1625(c) proceedings were preceded and attended by some eyebrow-raising irregularities. Customs issued a ruling holding that a "Johnny Collar" shirt made entirely from BKMY was not made of metalized yarns. This ruling was accompanied by a doctored Customs laboratory report that clearly showed the metal in the yarns, but also reflected an agreement among Customs officials to disregard the Yarn Ruling, which was otherwise binding on them. Best Key and another party filed comments opposing the revocation; no one filed comments in support. Yet the administrative record reveals that in conducting the revocation proceedings, Customs engaged in improper *ex parte* contacts with domestic competitors of Best Key, soliciting their views on the classification question, and relying on those views, without placing them in the public record.

These irregularities should be disturbing to the Court—as was evident in the prior appeal—but need not be addressed to resolve the instant appeal. However, these alleged irregularities will escape judicial review altogether if this Court declines to order the transfer of this case to district court.

Best Key invoked the CIT's "residual" jurisdiction, which allows that court to review, *inter alia*, matters relating to the "administration and enforcement" of the Customs and trade laws.  28 U.S.C. § 1581(i)(4).  This Court has previously held *en banc* that all actions brought under § 1581(i) must be grounded in the APA. *Motions Sys. Corp. v. Bush*, 437 F.3d 1356, 1359 (Fed. Cir. 2006).

After initially dismissing the action for want of subject matter jurisdiction, *Best Key Textiles Co. v. United States*, slip op. 13-148 (Ct. Int'l Trade Dec. 13, 2013) ("*Best Key I*"), the CIT granted Best Key's motion for reconsideration, assumed jurisdiction of this action under § 1581(i)(4), and, reaching the merits of the complaint, denied Best Key's motion for judgment on the agency record, thereby sustaining the Revocation Ruling, *Best Key Textiles Co. v. United States*, Slip Op. 14-22 (Ct. Int'l Trade Feb. 25, 2013) ("*Best Key II*").  In granting the motion for reconsideration, the CIT denied "as moot" Best Key's pending motion to transfer this action to district court.  *Id.* at 27.

Best Key then appealed the denial of its motion for judgment on the agency record to this Court, and the parties to that appeal briefed and argued the merits of the CIT's decision upholding the Revocation Ruling.  The Government did not (and, indeed, could not) cross-appeal from the CIT's holding that it had jurisdiction over the case.  It did, in its briefing, suggest affirmance of the CIT's decision on the alternative ground of lack of subject matter jurisdiction.

This Court, in a decision dated February 3, 2015, concluded that the CIT lacked subject matter jurisdiction over this action under § 1581(i), and remanded the case to the CIT "with instructions to dismiss" it on that basis. *Best Key III*, 777 F.3d at 1357. This Court did not reach the merits of Best Key's complaint, nor of the decision of the court below. Best Key's challenge to the Revocation Ruling, and the process by which it was issued, remains unheard.

After this Court's mandate issued and this action was returned to the CIT, Best Key promptly filed in that court a motion to transfer this case to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1631, so that its APA claim could be heard. After the CIT denied the motion, and ordered the case dismissed for lack of subject matter jurisdiction, Best Key timely filed this appeal challenging the CIT's refusal to transfer.

## STANDARD OF REVIEW

"[W]hether to transfer a claim to another court pursuant to 28 U.S.C. § 1631 … is discretionary and is reviewed on appeal for abuse of discretion." *Newton Lake Estates v. United States*, No. 97-5137, 1998 U.S. App. LEXIS 7329, at *4 (Fed. Cir. Apr. 10, 1988). A court abuses its discretion by "ma[king] an error of law, or a clear error of judgment, or ma[king] findings which [are] clearly erroneous." *Manville Sales Corp. v. Paramount Sys.*, 917 F.2d 544, 555–56 (Fed. Cir.

1990) (citations omitted); *see also Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) ("[a] district court abuses its discretion when its decision is based on clearly erroneous findings of fact, is based on erroneous interpretations of the law, or is clearly unreasonable, arbitrary, or fanciful"). However, "[t]he question of whether such a transferee court would have jurisdiction is … a question of law subject to our *de novo* review." *Newton Lake Estates* at *4–5.

While this Court reviews transfer decisions on a partial abuse of discretion standard, § 1631 contains requirements pertaining to the exercise of judicial discretion in transfer matters. Thus, § 1631 *compels* a court to consider transfer once that court determines it does not have jurisdiction to hear the action. 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court … and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other court in which the action or appeal could have been brought at the time it was filed … ."). "[T]ransfer is appropriate if (1) the transferor court lacks jurisdiction; (2) the action could have been brought in the transferee court at the time was filed; and (3) transfer is in the interest of justice." *Zoltek Corp. v. United States*, 672 F.2d 1309, 1314 (Fed. Cir. 2012).

The mandatory nature of § 1631 requires a court to consider the merits of transfer before dismissing a case for lack of jurisdiction, and a plaintiff therefore cannot waive his right to a transfer. *Miller v. Hambrick*, 905 F.2d 259, 262 (9th

Cir. 1990); *In re McCauley*, 814 F.2d 1350, 1352 (9th Cir. 1987). Once a court determines, or is told, that it lacks jurisdiction over a case, it "only has the authority to make a single decision; to dismiss the case, *or* 'in the interests of justice,' to transfer it to [another court] pursuant to 28 USC 1631." *Boultinghouse v. Lappin*, 816 F. Supp. 2d 107, 112–13 (D.D.C. 2011) (emphasis in original). A court's authority to consider transfer only arises, in the first instance, when it has been found to be without jurisdiction over a case. *Sorcia v. Holder*, 643 F.3d 117, 122 (4th Cir. 2011).

## **ARGUMENT**

The Court of International Trade abused its discretion when, following this Court's remand in *Best Key III* with instructions to dismiss for lack of subject matter jurisdiction, it refused to consider transfer of this action to a court of appropriate jurisdiction pursuant to 28 U.S.C. § 1631.

First, the CIT erred when it surmised that the question of transfer was precluded by the so-called "mandate rule." That rule, a corollary of the "law-of-the-case" doctrine, is meant to preclude re-litigation, following remand, of issues which have been litigated before, *and decided by*, the appellate court. Neither the issue of subject matter jurisdiction, nor the question of transfer, was the subject of *Best Key III*, and neither question could have properly been raised in the opening

brief in that case. These questions were not "within the scope of the judgment appealed from." *Taylor v. PTO*, 385 Fed. App'x 980, 982 (Fed. Cir. 2010). The question could not have been raised by government cross-appeal. *Bailey v. Dart Container Corp.*, 292 F.3d 1360, 1362 (Fed. Cir. 2002). While this Court upheld the CIT's determination on the alternative basis of lack of subject matter jurisdiction, neither its decision nor remand order touched on the question of transfer. Since this Court, when considering transfer, makes a *de novo* determination of whether a transferee court would have jurisdiction of a case, *Newton Lake Estates*, 1998 U.S. App. LEXIS 7329, at *4–5, and no such determination was made in *Best Key III*, it was incorrect for the lower court to surmise that the question of transfer was considered, much less resolved, in that appeal. A court's power to consider transfer, which derives from statute, 28 U.S.C. § 1631, is a mandatory duty, and the right to transfer cannot be waived. As nothing in the Court's prior decision or mandate suggests that the question of transfer was considered or resolved, it was incorrect for the CIT to surmise otherwise.

Second, the CIT abused its discretion in refusing to exercise that jurisdiction to consider whether transfer of this case to the district court would be in the "interest of justice" under the test applied in § 1631. A "court's failure to exercise discretion constitutes an abuse of discretion." *Miller*, 905 F.2d at 262 (citing *Taylor v. Social Sec. Admin.*, 842 F.2d 232, 233 (9th Cir. 1988)). Third, the CIT erred in

surmising (without deciding) that the district court would not have jurisdiction over this action.  Federal district courts generally have jurisdiction over suits challenging agency actions pursuant to the Administrative Procedure Act.  The monetary loss that Best Key suffered in this case is precisely the type of injury needed to establish standing in the district courts in APA cases.  Moreover, refusing to consider transfer would reach the anomalous result that the type of action contested in this case—CBP's revocation of a binding ruling—is immune from judicial review.

Finally, when the "interest of justice" factors used to determine whether transfer are considered, it is clear that transfer is indicated in this action.  Transfer to correct errors in construction of the jurisdiction of the national courts is to be liberally granted, *see United States v. U.S. Shoe Co.*, 523 U.S. 360, 366 (1998).  The action is not patently frivolous, was timely filed, and the application to transfer was made promptly.  Transfer is indicated, at the CIT erred in refusing to transfer the action.

## I.    The "Mandate Rule" Should Not Be Interpreted as Precluding the CIT from Considering the Question of Transfer

In the decision below, the CIT suggested that it was precluded from considering the question of transfer under 28 U.S.C. § 1631 by virtue of the "mandate rule."  Since this Court had remanded the case to the CIT with instructions to dismiss for lack of subject matter jurisdiction, the CIT reasoned, it had no power to do anything other than carry out the mandate.  The CIT also suggested that this Court,

in formulating the remand, might have implicitly considered the issue of transfer, and decided against it, raising the question of whether Best Key should have sought transfer by seeking an amendment or recall of the mandate in *Best Key III*.

This Court's precedential decisions do not set out a clear rule. Certainly, when this Court finds that the CIT lacks jurisdiction over a cause of action, the CIT has the power to consider the question of transfer under § 1631. Thus, in *Schick v. United States*, 554 F.3d 992 (Fed. Cir. 2009), this Court reversed a CIT decision which had assumed jurisdiction over a challenge to the revocation of a customs broker's license, finding that the CIT lacked subject matter jurisdiction. It remanded the case to the CIT with instructions for that court to consider transferring the case to district court. In so doing, it cited another decision, *Butler*, *supra*, 30 C.I.T. 832, in which the CIT transferred a similar challenge to district court without appellate court instruction. The CIT's power to transfer is statutory and derived from § 1631—not from this Court's mandate.

Application of the "remand rule," on which the CIT based its determination not to transfer this action, necessarily entails a case-specific determination. As this Court noted in a non-precedential opinion, *Taylor v. PTO*, *supra*, 385 Fed. App'x 980, the "remand rule" is derived from the "law-of-the-case rule," and seeks to prevent re-litigation of issues deemed decided. In *Taylor*, the plaintiff sued the U.S. Patent and Trademark Office (PTO) seeking fees and monetary damages re-

sulting from the wrongful expiration of its patent.  Reversing a lower court order that dismissed the complaint, this Court provided equitable relief, directing the PTO to reinstate the patents, conditioned on payment of all outstanding mainte-nance fees, but making no provision for monetary damages.  After the case was remanded to the district court, the plaintiff appealed from that court's failure to award monetary damages.  This Court affirmed the district court's judgment, hold-ing that the court was bound by the "mandate rule" to "follow an appellate decree as the law of the case." *Id.* at 981.  In discussing the mandate rule, this Court stat-ed,

> [T]he rule "forecloses reconsideration of issues implicitly or explicitly decided on appeal." Determining what issues are decided on appeal requires consideration of the scope of the judgment appealed from, and "[a]n issue that falls *within the scope of the judgment appealed from* but is not raised by the appellant *in its opening brief on appeal* is necessarily waived."

*Id.* at 982 (internal citations omitted).  Because the earlier mandate in *Taylor* had been specific and restrictive, this Court held that the plaintiff, if dissatisfied with the relief given, should have moved to amend the mandate. It should be noted, however, that *Taylor* did not involve a question of whether the lower court could exercise its statutory power to consider transfer.

On the other hand, the question of transfer was not directly before the Feder-al Circuit in *Best Key III*.  In this regard, it should be noted that the question of the CIT's jurisdiction had been discussed in that Court.  Initially, the Court dismissed

the case for lack of subject matter jurisdiction.  *See Best Key I.*  Best Key then filed a motion for reconsideration of that decision, or, in the alternative, for transfer of the action to U.S. District Court for the District of Columbia.  The CIT granted Best Key's motion for reconsideration, assumed jurisdiction over the action, and proceeded to render an unfavorable decision on Best Key's motion for judgment on the agency record; and denied Best Key's motion to transfer "as moot" in light of the fact that it had accepted jurisdiction over the case.  *Best Key II*, slip. op. at 27.  The negative judgment that Best Key received and appealed from was not based on questions of jurisdiction, but rather the merits of its APA claim.

Under the circumstances, Best Key could not, pursuant to this Court's precedent, have filed an appeal from a positive determination (on jurisdiction) subsumed in a negative determination on the merits of its claims.  Best Key could only appeal from the negative judgment on the merits of its dispositive motion.  It is axiomatic that a party can only appeal from a judgment if it is "aggrieved by it."  *In re Sims*, 994 F.2d 210, 214 (5th Cir. 1993) (citation omitted).  It is equally clear that a litigant has no reason to appeal a ruling that is entirely favorable to it.  *Saddleback Valley Cmty. Church v. El Toro Materials Co.*, 504 F.3d 978, 982 (9th Cir. 2007).  The CIT's decision on the question of subject matter jurisdiction was entirely favorable to Best Key.  There was no basis for Best Key to appeal from it, and certainly no basis for Best Key to raise the issue of subject matter jurisdiction

in its opening brief on appeal.  Accordingly, there is no basis to suggest than any waiver occurred respecting this issue.

Similarly, it would have been inappropriate for the Government to raise the question of subject matter jurisdiction by way of a cross-appeal, as the lower court's judgment was entirely favorable to it.  *Nat'l Union Fire Ins. Co. v. West Lake Acad.*, 548 F.3d 8 (1st Cir. 2008) ("[a] cross appeal is generally not proper to challenge a subsidiary finding or conclusion when the ultimate judgment is favorable to the party cross appealing"); *see also Byron v. Clay*, 867 F.2d 1049, 1050 (7th Cir. 1989) ("[t]he district court's judgment is entirely in the defendants' favor, and you can't appeal from a judgment entirely in your favor"); *Luna v. United States*, 454 F.3d 631, 635 (7th Cir. 2006) ("[p]arties in litigation may suffer setbacks along the road to favorable judgments.  Appeals are taken to reverse judgments, not intermediate setbacks" (citation omitted)).  The rule regarding appeals is well-recognized in this Circuit.  *Bailey v. Dart Container Corp.*, 292 F.3d 1360, 1362 (Fed. Cir. 2002).[19]

---

[19] Before the CIT, the Government suggested that Best Key should have somehow filed a conditional appeal relating to the question of subject matter jurisdiction. This Court's precedent makes clear that such an appeal, or a "conditional" appeal would have been inappropriate. *Aventis Pharma S.A. v. Hospira*, 637 F.3d 1341, 1343 (Fed. Cir. 2014); *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1350 (Fed. Cir. 2011).

Thus, the question of subject matter jurisdiction was not before the Court in *Best Key III* by virtue of being an appealed or cross-appealed issue. The issue was raised by the Government as an alternative basis for affirming the decision of the CIT, and was accepted by the Court accordingly. While the issue of the CIT's jurisdiction was considered during the appeal, the question of transfer most assuredly was not. While this Court made a clear determination respecting the CIT's lack of subject matter jurisdiction over Best Key's APA case, it never addressed the question of whether jurisdiction was proper in another court, or whether the case should be transferred. In contrast to the situation in *Taylor*, where the issue of remedy had been squarely put before this Court by the appellant, and was directly addressed in the particularized mandate set out therein, the question of transfer pursuant to 28 U.S.C. § 1631 was not squarely before this Court in *Best Key III*.

Nor did this Court make any explicit determination regarding transfer in *Best Key III*. Based upon a review of "the scope of the judgment appealed from," *Taylor*, 385 Fed. App'x at 982, there is no reason to believe this Court implicitly considered the issue of transfer, or that Best Key had waived its right to seek such relief. Indeed, since this Court considers *de novo* the question of whether a transferee court would have jurisdiction over an action, *Newton Lake Estates*, 1998 U.S. App. LEXIS 7329, at *4–5, it would be reasonable to expect that this Court would have expounded on the issue, or sought briefing from the parties concerning same

if, as the CIT surmises, this Court considered the question of transfer in formulating its mandate.  There is no indication that this was the case.

It seems clear, therefore, that the consideration of transfer pursuant to § 1631 was not subsumed in this court's mandate in *Best Key III*, and that the CIT's statutory authority to consider the question of transfer was not curtailed thereby.  As this Court has noted, the "mandate rule" is but a corollary of the "law of the case" rule.  *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1348 n.1 (Fed. Cir. 2001).  That rule "merely expresses the practice of courts generally to refuse to reopen was has been decided, not a limit to their power."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citing *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)).  Contrary to the situation in *Taylor*, there is nothing in this case from which to conclude that the question of transfer was an issue that had "been decided" in this Court's remand mandate in *Best Key III*.  *Ibid.*  Questions regarding transfer of cases "inhere in the very nature of jurisdictional lines, for as our cases aptly illustrate, few jurisdictional lines can be so finely drawn as to leave no room for disagreement on close cases."  *Id.* at 818 (citing *Kmart Corp. v. Cartier Inc.*, 485 U.S. 176 (1988) (dealing with the question of whether the CIT or the district courts had jurisdiction over an APA challenge to a Customs ruling)); *United States v. Hohri*, 482 U.S. 64 (1987).

Indeed, this Court was aware from the CIT docket included in *Best Key III* that a § 1631 motion to transfer had been before the CIT, and had been denied as moot when the CIT reversed itself and assumed subject matter jurisdiction.  It would have been reasonable for this Court to assume that once the CIT's decision on jurisdiction had been reversed, and the question of transfer was rendered no longer moot, the CIT would again take up the question of transfer—as indeed, Best Key asked it to do.

The CIT thus erred in concluding that consideration of transfer under § 1631 was precluded by the "mandate rule."

## II.    The CIT Abused Its Discretion by Refusing to Transfer This Case to District Court.

The CIT abused its discretion by abdicating its judicial role and refusing to determine whether the transfer of this matter would be in the interest of justice. Circuit courts throughout the United States have held that a "court's failure to exercise discretion constitutes an abuse of discretion."  *Miller*, 905 F.2d at 262 (citing *Taylor v. Social Sec. Admin.*, 842 F.2d 232, 233 (9th Cir. 1988)); *see also Jackson v. L&F Martin Landscape*, 421 Fed. App'x 482, 484 (6th Cir. 2009) (section 1631 "confer[s] broad discretion in ruling on a motion to transfer.  However, that broad discretion is abused when it is not at least exercised" (citation omitted)).

Instead of considering the issue of transfer on its merits, the CIT held that it was bound by this Court's mandate instructing the lower court to dismiss the case,

and divined instructions from this Court as containing an unspoken direction not to consider transferring the case. App. 4a ("this court may not presume that the appellate court did not implicitly consider the question of transfer on appeal when it explicitly remanded only with instructions to dismiss the case"). The CIT's refusal to exercise its discretion regarding transfer of this case to district court constitutes an abuse of discretion. Indeed, the CIT's stated ground for refusing to entertain the transfer motion contained no inquiry, based on factors such as the scope of the judgment appealed from, into whether this Court's mandate implicitly decided the issue of transfer; the CIT *refused* to make such an inquiry.

The CIT also committed reversible error by erroneously interpreting this Court's mandate in *Best Key III* as prohibiting the lower court from considering transfer. The mandate to dismiss the case does not render the lower court impotent or incapable of considering whether transfer of the case would be in the interests of justice. A finding that a court lacks subject matter jurisdiction—the only finding voiced by this Court—does not end the issue of whether transfer is appropriate, but ingeminates it. *Sorcia*, 643 F.3d 117; *Boultinghouse*, 816 F. Supp. 2d at 112–13. The mandate rule "prevents a lower court from relitigating an issue after a reviewing court *has decided the issue in the same case*." Anne B. Poulin, *Prosecution Use of Estoppel and Related Doctrines in Criminal Cases: Promoting Consistency, Tolerating Inconsistency*, 64 Rutgers L. Rev. 409, 422 (2012) (emphasis added).

The mandate rule, an application of the law-of-the-case doctrine, is discretionary—not jurisdictional. *United States v. Gama-Bastidas*, 222 F.3d 779, 784–85 (10th Cir. 2000) ("[n]either law of the case nor the mandate rule is jurisdictional"). Although a lower court is "bound to carry the mandate of the upper court into execution and [can] not consider the questions which the mandate laid to rest," the issue of transfer was never before this Court in the previous proceedings. *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939). Because the matter of transferring this case to district court was neither brought before nor considered by this Court, the mandate did not bar the CIT from reviewing the merits of transfer. Applying the rule to *presume* that this Court had made an unvoiced determination on transfer, without considering the scope of the judgment appealed from in *Best Key III*, constitutes a further abuse of discretion by the lower court.

The purpose of the mandate rule is to "bring an end to litigation, discourage panel shopping, and ensure the obedience of lower courts." *Piambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir. 1985) (citations omitted). This rule was not designed to be shield by a lower court from satisfying its judicial duties, nor as a sword to strike down a potentially meritorious claim from being heard in the proper venue. It cannot be stated with sincerity that the rule is so wooden as to "work a manifest injustice" of purloining from a plaintiff the right to judicial review of an administrative decision alleged to be arbitrary, capricious and not in accordance

with law. *Gould, Inc. v. United States*, 67 F.3d 925, 930 (Fed. Cir. 1995) (citations omitted).

Moreover, neither the law-of-the-case doctrine nor the mandate rule precludes review of non-waivable issues. *Gama-Bastidas*, 222 F.3d at 785 (citing *Dow Chem. Corp. v. Weevile-Cide Co.*, 897 F.2d 481, 486 n.4 (10th Cir. 1990)). Thus, the obligation of a court to consider whether transfer pursuant to § 1631 is in the interest of justice cannot be waived and is unaffected by a mandate to dismiss. *See Sodexho Marriott Mgmt. v. United States*, 61 Fed. Cl. 229 (2004) (courts "have the authority and duty to transfer a case under 28 U.S.C. § 1631"); *see also Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999) ("[i]t might seem paradoxical to suggest that a court that lacks jurisdiction over a case can examine the merits of the case. But the paradox dissolves when we remind ourselves that Congress in 28 U.S.C. § 1631 has conferred jurisdiction on federal district courts to decide whether to transfer or dismiss cases over which they lack jurisdiction to adjudicate fully").

Nor could Best Key have raised the issue of transfer before this Court on the prior appeal. In granting Best Key's motion for reconsideration, the CIT denied its alternative motion as for transfer as "moot" and assumed jurisdiction over the case. The issue was in fact moot and not proper for appeal, as discussed above; it remained moot up to the moment this Court issued its judgment in *Best Key III*. The

lower court's decision on subject matter jurisdiction being favorable to Best Key, it was neither necessary nor appropriate for Best Key to address it in its opening brief.

## III.   The CIT Erred in Finding That the Proposed Transferee Court Would Not Have Jurisdiction over This Action.

To transfer a case pursuant to 28 U.S.C. § 1631, the reviewing court must find a want of jurisdiction, that the transfer is in the interest of justice, and that case could have been brought in the transferee court.  Although the CIT did not reach a determination regarding whether the transfer would be in the interest of justice, it did state that even if it could exercise discretion over the motion to transfer, "this court remains unpersuaded that jurisdiction over this matter would be proper in that district court, because the defendant is correct that the Court of International Trade is the court vested with *exclusive* jurisdiction over the *res* of the type of matter about which the plaintiff fundamentally complains"  App. 4a.

The CIT's holding—if understood as claiming exclusive jurisdiction over all cases involving or pertaining to a customs ruling[20]—flies in the face of this Court's decision that resulted in the remand to the CIT.  Having been told that it lacks ju-

---

[20] The word "res" is derived from Latin and is defined to mean "a thing," "object, subject-matter or status." Black's Law Dictionary 1304 (6th ed. 1990). The lower court's opinion seems to suggest that the CIT is vested with exclusive jurisdiction over all things pertaining to "the type of matter about which the plaintiff fundamentally complains"—a Customs ruling. But such a conclusion flies in the face of this Court's decision in *Best Key III.*

risdiction over Best Key's action, the CIT cannot possibly claim to have *exclusive* jurisdiction over this type of action.  Moreover, if the CIT meant to indicate that it has exclusive jurisdiction over protest actions contesting particular duty assessments, this would not vest it with jurisdiction to review the ruling of which Best Key complains.  The Supreme Court has made clear that, in protest cases, Customs rulings are not the subject of the case, but merely sources that courts may elect to give non-binding deference based on their power to persuade.  *See Mead*, *supra*, 533 U.S. 218.  As noted above, a protest case in the CIT never results in direct review or invalidation of a ruling; it involves a different Customs decision (by a port officer, rather than Customs' Office of Rulings and Regulations); it is reviewed *de novo* rather than on an administrative record; it is not reviewed under the APA standard; and it does not result in a ruling being held unlawful and set aside, as in APA review.

In this case, the Revocation Ruling issued to Best Key is an agency "order" reviewable under the APA.[21]  The APA defines an order as the "whole or part of a final disposition, whether affirmative, negative, injunctive or declaratory in form, of an agency in a matter other than rulemaking but including licensing."  5 U.S.C. § 551(6).  Declaratory rulings are orders under the APA, which become final on

---

[21] Section 5(e) of the APA, 5 U.S.C. § 554(e), indicates that "the agency, with like effect as in the case of other orders, and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty."

their date of publication. *See Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 397 (9th Cir. 1996). Orders classifying goods under a statutory scheme are "orders" reviewable under the APA. *See Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004). The declaratory nature of the Revocation Ruling therefore does not shield it from APA review. *ITT Corp. v. IBEW*, 419 U.S. 428, 443–44 (1975). The Revocation Ruling was not advisory; it "was expected to and did have legal consequences." *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatl.*, 400 U.S. 62, 71 (1970).[22] It has not been disputed that Best Key suffered significant current and potential business harm as a result of its issuance. Lost sales and lost business opportunity "is the prototypical injury-in-fact." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921 (7th Cir. 2013) (citing *N. Shore Gas Co. v. EPA*, 930 F.2d 1239 (7th Cir. 1991)).

It is unquestioned that federal district courts have jurisdiction over actions commenced under the APA to seek review of final agency determinations. Once it was determined the CIT lacked subject matter jurisdiction, the action should have been transferred to a court having proper jurisdiction. *Doe v. United States*, 372 F.3d 1308, 1317 (Fed. Cir. 2004) (granting plaintiff's motion to transfer upon find-

---

[22] In particular, the Revocation Ruling terminated the classification of Best Key's product as "metalized yarn", terminated the treatment of garments made therefrom as being of "other fabrics", and set out a new classification rule binding on all Customs officers. *See* 19 C.F.R. § 177.9(a).

ing that "the district court would have had jurisdiction based on Doe's constitutional and APA claims"); *see also Millican v. United* States, No. 05-1330, 2006 U.S. Claims LEXIS 673 (Aug. 24, 2006) (finding plaintiff's claim of arbitrary and capricious conduct "subject to APA review," and holding that the claim "could have been filed in a federal district court in the first instance").

While it would seem logical for Congress to entrust jurisdiction to the CIT to hear all challenges to customs rulings or other Customs determinations, this Court has held otherwise; the CIT's jurisdiction does not extend to all matters arising under the Customs laws.[23] And, indeed, the U.S. District Court for the District of Columbia has exercised subject matter jurisdiction over APA claims to challenge certain Customs rulings. *See Horizon Lines LLC v. United States*, 429 F. Supp. 2d 92 (D.D.C. 2006) (review of ruling concerning admissibility of certain merchandise under coastwise trade laws); *see also Davis Walker Corp. v. Blumenthal*, 460 F. Supp. 283, 290 (D.D.C. 1978) ("[j]urisdiction lies in the federal court over customs-related matters where no adequate remedy exists in the Customs Court"). Thus, transfer to district court is appropriate.

---

[23] *See, e.g.*, *Schick*, *supra*, 554 F.3d 992; *Retamal v. United States*, 439 F.3d 1372 (Fed. Cir. 2006). Both cases hold that the CIT lacked jurisdiction over certain customs broker challenges to license revocations. Similar claims were found to be properly transferred to district court. *Butler*, *supra*, 30 C.I.T. 832.

A finding that no other federal court has jurisdiction over Best Key's action would result in a determination that, for practical purposes, Customs rulings issued under 19 U.S.C. § 1502, and proceedings under § 1625(c) for the modification or revocation of such rulings, are not judicially reviewable. This would fly in the face of the central precept of American administrative law: that final agency determinations are presumed to be judicially reviewable. *Legal Aid Soc'y v. Brennan*, 608 F.2d 1319, 1330 (9th Cir. 1979) ("[a]dministrative action is subject to judicial review unless it is clear that such review was not to be available"). Although this Court has held that the CIT's limited grant of jurisdiction does not encompass this type of case, there is neither a statutory bar nor clear and convincing evidence that would preclude this case from being heard in district court under 28 U.S.C. § 1331. *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967) ("only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review"). This Court's narrow interpretation of § 1581(i) does not manifest clear and convincing evidence that Congress intended to preclude this issue from judicial review. There is no statute specifically precluding judicial review, and nothing to suggest that ruling determinations are committed to agency discretion. Indeed, the APA itself provides for judicial review of final agency actions. 5 U.S.C. § 706.

The scope of the subject matter jurisdiction of the national courts, and of the CIT in particular, has given rise to confusion concerning the proper venue for particular types of actions. Courts have consistently followed a rule of liberality in permitting transfer of cases to courts having proper jurisdiction. *See, e.g.*, *U.S. Shoe*, 523 U.S. at 366 (1998) (holding that the CIT had exclusive jurisdiction over actions challenging the assessment of harbor maintenance taxes on exports, but noting that plaintiffs who had filed actions in the Claims Court could transfer those actions to the CIT under § 1631).

The U.S. District Court for the District of Columbia has subject matter jurisdiction over Best Key's instant appeal, and the case should be transferred to that court.

## IV. Transfer of This Case to District Court Would Be in the Interests of Justice.

Transfer under 28 U.S.C. § 1631 is applied primarily to correct errors made by plaintiffs or appellants in bringing an action or appeal in a district court or appellate court other than the one having jurisdiction. It is also applicable to transfers of action to and from certain courts of specialized jurisdiction, including the CIT. *See* Wm. J. Moore, *Moore's Federal Practice* § 111.51 (3d ed. 1999). The statute provides, in pertinent part:

> Section 1631. *Transfer to Cure Want of Jurisdiction.* Whenever a civil action is filed in a court … and that court files there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such

action … to any other such court in which the action … could have
been brought at the time it was filed … and the action … shall pro-
ceed as if it had been filed in … the court to which it is transferred on
the date upon which it was actually filed in … the court from which it
was transferred.

The transfer statute seeks to protect litigants against both lawyer error and statutory imprecision. *Britell v. United States,* 318 F.3d 70, 74 (1st Cir. 2003). It "reflects the salutary policy [inherent in federal law] favoring the resolution of cases on the merits." *Butler* 30 C.I.T at 841 (international quotations and citations omitted). The statute's language, specifically that the court "shall" transfer an action, "dictates a preference for transfer in all cases that could have been brought in some other federal court." *Britell*, 318 F.3d at 73; *see, e.g.*, Webster's Third New Int'l Dictionary 2085 (1993) (stating that "shall" typically is "used in laws … to express what is mandatory"). Indeed, the CIT has held that where there a want of subject matter jurisdiction, as the Federal Circuit has determined here, "the court is required to transfer the action to another federal court in which the action could have been brought if doing so is in the interest of justice." *Schick v. United States*, 31 C.I.T. 2017, 2030 (2007); *see also PRP Trading Corp. v. United States*, 885 F. Supp. 2d 1312, 1315 (Ct. Int'l Trade 2012) ("The Court has found a statutory duty to transfer a case to cure a want of jurisdiction, if it is in the interest of justice.").

Transfer is the preferred course of action in a case "unless: (1) the action is patently frivolous, (2) the action was not timely filed in the original court, or (3)

the movant was dilatory in seeking transfer." *Butler*, 30 C.I.T. at 837.  None of

these prohibiting factors is present in this case.  Where, as here, an application for

transfer is filed shortly after an appellate mandate is issued, it is clearly not a dila-

tory application.  *Ibid.*  Plaintiff filed this action timely; the statute of limitations

applicable to actions brought under this Court's residual jurisdiction is two years,

28 U.S.C. § 2636(i), and this action was brought within days after issuance of the

challenged Revocation Ruling.  Thus, the action was timely filed.

Transfer to preserve the date of filing is also favored over dismissal where

the filing of a new complaint in the court having proper jurisdiction would be time-

barred.  Federal district courts require appeals from arbitrary and capricious agency

action to be brought in that court within sixty days from publication.  28 U.S.C.

§ 2344.  As this case would be time-barred if plaintiff were forced to file it anew in

district court, transfer pursuant to § 1631, which preserves the date of filing, is in

accordance with the interests of justice.  *Tex. Peanut Farmers v. United States*, 409

F.3d 1370, 1374–75 (Fed. Cir. 2005) (remanding with instructions to transfer be-

cause "absent transfer, the applicable statutes of limitations may bar appellants

from adjudicating otherwise legitimate claims"); *see also Phillips*, 173 F.3d at 610

("[a] compelling reason for transfer is that the plaintiff, whose case if transferred is

for statute of limitations purposes deemed by section 1631 to have been field in the

transferor court … will be time-barred if his case is dismissed and thus has to be filed anew in the right court" (citations omitted)).[24]

Furthermore, Best Key's claim is not frivolous.  A frivolous action involves claims that are "legal points not arguable on their merits," and "those whose disposition is obvious."  *Galloway Farms v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987) (citations omitted).  Best Key's action seeking review of arbitrary and capricious agency conduct, and raising serious questions as to the legitimacy and legality of the final agency action, cannot be fairly categorized as frivolous.  *Cf. Young v. United States*, 88 Fed. Cl. 283, 292 (2009) (denying a motion to transfer upon a finding that plaintiff's claims had been asserted numerous times in other federal courts and had been dismissed as "abusive, malicious, and frivolous" in nature), *appeal dismissed*, 367 Fed. App'x 125 (Fed. Cir. 2009).  The action asks whether an agency determination is rendered arbitrary or capricious when it relies, in part, on falsified materials; or when the agency conducted an improper *ex parte* hearing after the time for filing of public comments had closed.  The reviewing courts have conceded that this action raises claims relating to the tariff classification of merchandise, as to which there exists an entire body of jurisprudence.  An action raising good faith claims under the APA is not "frivolous" and should be

---

[24] This case, if initially filed in district court instead of the CIT, would have been timely under 28 U.S.C. § 2344.

transferred if filed in the wrong court. *Reilly v. United States*, 93 Fed. Cl. 643 (2010).

When the "interest of justice" factors are considered—the timeliness of the action, the timeliness of the motion for transfer, and the fact that the claims in this action are not frivolous—it seems clear that this action should have been transferred to the U.S. District Court for the District of Columbia pursuant to § 1631. The CIT abused its discretion by failing to transfer.

## <u>CONCLUSION</u>

For the reasons set forth herein, Best Key submits the judgment below should be reversed, and this case transferred to the U.S. District Court for the District of Columbia.

Respectfully submitted,

  /s/ John M. Peterson
John M. Peterson
  *Counsel of Record*
NEVILLE PETERSON LLP
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

September 1, 2015



**ELLENORA G. JACKSON; WALTER JACKSON; RENA WILSON, By and Through Next Friend Ellenora G. Jackson, Plaintiffs-Appellants, v. L&F MARTIN LANDSCAPE; MARK BELIG, Defendants-Appellees.**

**09a0465n.06**

**No. 08-3904**

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

**421 Fed. Appx. 482; 2009 U.S. App. LEXIS 15097; 2009 FED App. 0465N (6th Cir.)**

**July 6, 2009, Filed**

**NOTICE:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY: [**1]**
    ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO.
Jackson v. L&F Martin Landcape, 2008 U.S. Dist. LEXIS 45223 (N.D. Ohio, June 9, 2008)

**COUNSEL:** For ELLENORA JACKSON, WALTER JACKSON, RENA WILSON, By and Through Next Friend Ellenora G. Jackson, Plaintiffs - Appellants: Eugenya Yvonne Harris, Law Offices, Cleveland, OH.

For L&F MARTIN LANDSCAPE, MARK BELIG, Defendants - Appellees: Christopher M. Corrigan, Glowacki & Associates, Cleveland, OH.

**JUDGES:** Before: KEITH, COLE, and WHITE, Circuit Judges.

**OPINION BY:** WHITE

**OPINION**

    [*482]  **WHITE, Circuit Judge.** Plaintiffs Ellenora and Walter Jackson and minor Rena Wilson appeal the district court's dismissal of their case without prejudice for lack of personal jurisdiction over defendants L&F Martin Landscape and Mark Belig. On appeal, plaintiffs do not contest the district court's ruling that personal jurisdiction over defendants was lacking. Rather, they argue that the district court should have transferred the case to the New Jersey district court instead of dismissing the matter. Because the district court failed to address plaintiffs' request to transfer pursuant to 28 U.S.C. § 1631 and did not determine whether transfer would be in the interest of justice, we REVERSE and REMAND.

**BACKGROUND**

    On or about September 5, 2005, two automobiles collided  [**2] in Franklin Township, New Jersey. Plaintiffs, who are all residents of Cleveland, Ohio, were in one car--Ellenora Jackson was driving. New Jersey corporation L&F Martin Landscape owned the other vehicle, which was driven by Mark Belig, a resident of

Case: 15-1775    Document: 17    Page: 48    Filed: 09/01/2015

Page 2

421 Fed. Appx. 482, *482; 2009 U.S. App. LEXIS 15097, **2;
2009 FED App. 0465N (6th Cir.)

New Jersey. Plaintiffs brought suit premised on diversity jurisdiction in the Northern District of Ohio on September 4, 2007, alleging Belig's negligent operation of the vehicle and L&F's negligent entrustment of its vehicle to Belig.

Defendants filed a motion to dismiss for lack of personal jurisdiction. In their brief opposing defendants' motion to dismiss, plaintiffs argued in favor of jurisdiction and, in the alternative, that if the district court were to agree with defendants that personal jurisdiction was lacking, the court should transfer the case to New Jersey pursuant to 28 U.S.C. §§ 1404, 1406, and 1631.

**[*483]** On June 9, 2008, the district court granted the motion to dismiss without prejudice and entered judgment. The court ruled that it lacked personal jurisdiction over defendants under Ohio's long-arm statute and that the due process requirements were not met. At the end of its opinion, the court acknowledged plaintiffs' request that **[**3]** the case be transferred to New Jersey "pursuant to 28 U.S.C. § 1404 or 1406." The court observed that § 1406(a) provides that a district court shall dismiss a case where venue is improper "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." However, the court concluded that plaintiffs had not filed a § 1406 motion to transfer venue and had "presented no basis showing that the Court should grant a change of venue." The court accordingly dismissed the case without prejudice. Plaintiffs appealed.

## DISCUSSION

Plaintiffs expressly concede that personal jurisdiction may not have been proper in the Northern District of Ohio, but contend that the district court should have granted their request that the case be transferred to a New Jersey federal district court pursuant to 28 U.S.C. §§ 1404, 1406, and 1631. We review a district court's decision to dismiss a complaint rather than transfer the case for an abuse of discretion. *First of Michigan Corp. v. Bramlet,* 141 F.3d 260, 262 (6th Cir. 1998).

To the extent plaintiffs argue that the district court should have transferred their case pursuant to section 1404, they are mistaken. **[**4]** The purpose of this provision is to transfer actions brought in a permissible yet inconvenient forum. *Martin v. Stokes,* 623 F.2d 469, 471 (6th Cir. 1980). "[A] transfer under section 1404(a) may not be granted when the district court does not have

personal jurisdiction over the defendants." *Pittock v. Otis Elevator Co.,* 8 F.3d 325, 329 (6th Cir. 1993).

However, section 1406 applies to actions that are brought in an impermissible forum; the district court need not have personal jurisdiction over defendants before transferring pursuant to this section. *Martin,* 623 F.2d at 471, 474. Section 1406 states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Section 1631 also applies to such actions. It states that when the court "finds that there is a want of jurisdiction," it "shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought . . . ." 28 U.S.C. § 1631. [1] "A court may decide to **[**5]** dismiss an action rather than transferring it under § 1631 either because (1) no permissible federal court would have jurisdiction over the action, or because (2) transfer would not be in the interest of justice." *Roman v. Ashcroft,* 340 F.3d 314, 328 (6th Cir. 2003) (quotation marks omitted). [2]

> 1    Section 1631 also authorizes the transfer of appeals to any court in which that appeal could have been brought. *See* 28 U.S.C. § 1631. Moreover, the rule in this circuit is that section 1631 authorizes transfers in the event the court lacks "jurisdiction"--whether subject matter jurisdiction or personal jurisdiction. *See Roman v. Ashcroft,* 340 F.3d 314, 328 (6th Cir. 2003).
>
> 2    The question whether there is "no permissible federal court [that] would have jurisdiction over the action" does not appear to be at issue in this case. There does not appear to be any disagreement with the notion that the action could have been brought in the District of New Jersey.

As this court recently observed, sections 1406(a) and 1631 are "similar provision[s]" **[*484]** that "confer broad discretion in ruling on a motion to transfer." *Stanifer v. Brannan,* 564 F.3d 455, 456-57 (6th Cir. 2009). However, that broad discretion is **[**6]** abused when it is not at least exercised. *See Taylor v. Social Sec. Admin.,* 842 F.2d 232, 233 (9th Cir. 1988) ("A district court's failure to exercise discretion [regarding transfer under section 1631] constitutes an abuse of discretion."). We have previously recognized that it is an abuse of discretion for a district court "to refuse to transfer without

Case: 15-1775    Document: 17    Page: 49    Filed: 09/01/2015

Page 3

421 Fed. Appx. 482, *484; 2009 U.S. App. LEXIS 15097, **6;
2009 FED App. 0465N (6th Cir.)

determining whether transfer would be 'in the interest of justice.'" *Commodities Export Co. v. U.S. Customs Serv.,* 888 F.2d 431, 439 (6th Cir. 1989) (quoting 28 U.S.C. § 1631; citing *Taylor,* 842 F.2d at 233). Here, the district court did not determine whether it would be "in the interest of justice" to transfer the case. Moreover, although plaintiffs expressly requested transfer pursuant to section 1631, the district court did not consider transferring the case pursuant to that provision--its ruling only mentioned sections 1404 and 1406. By failing to address the propriety of a transfer pursuant to section 1631 and dismissing the case without first determining whether a transfer would be "in the interest of justice," the district court abused its discretion. [3]

> 3   Defendants argue on appeal that this court's recently-issued opinion in *Stanifer* [**7] *v. Brannan* supports their arguments for affirmance. However, in *Stanifer* the district court had expressly considered a section 1631 transfer and found that the interest of justice would not be served. *See Stanifer,* 564 F.3d at 457. Indeed, the *Stanifer* district court found that plaintiff filed his complaint "without having the slightest reason to believe that he could obtain personal jurisdiction over the Defendants within this jurisdiction"--in other words, there was no "arguable basis for thinking that the action was properly brought in the district in which it was originally filed"--and concluded that plaintiff "misused the processes of the Court," such that the interest of justice weighed in favor of dismissal. *See id.* at 457, 460.

In the instant case, the district court did not consider the propriety of a section 1631 transfer, let alone similarly find that a transfer would not serve the interest of justice.

Defendants also argue that any transfer of the case would somehow violate their due process rights. They provide no authority establishing that a transfer of this case would rise to the level of constitutional injury. When read in the most generous light, their argument is [**8] essentially that it would not be in the interest of justice to transfer. Such an argument is best addressed to the district court.

Finally, we note that plaintiffs maintain that their action would be barred by the applicable statute of limitations were this case not transferred. It is an apt observation that the reasons for transferring a case to a proper forum rather than dismissing "are especially compelling if the statute of limitations has run since the commencement of the action, so that dismissal might prevent the institution of a new suit by the plaintiff and a resolution on the merits." 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3827, at 587 (3d ed. 2007).

**CONCLUSION**

For the above reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.



**NEWTON LAKE ESTATES, INC. and GERALD MANCUS, Plaintiffs-Appellants, v. UNITED STATES, Defendant-Appellee.**

**97-5137**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**1998 U.S. App. LEXIS 7329**

**April 10, 1998, Decided**

**NOTICE:**        **[*1]** RULES OF THE FEDERAL CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**    Reported in Table Case Format at: 1998 U.S. App. LEXIS 25970.

**DISPOSITION:**    Affirmed.

**JUDGES:** Before MICHEL, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.

**OPINION BY:** MICHEL

**OPINION**

MICHEL, *Circuit Judge*.

*DECISION*

Newton Lake Estates, Inc. ("Newton Lake") and Gerald Mancus (together, "appellants") appeal the July 17, 1997 Order of the United States Court of Federal Claims dismissing their complaint for lack of jurisdiction pursuant to 28 U.S.C. § 1500, which was confirmed by the July 23, 1997 denial of their motion for reconsideration. The Court of Federal Claims did not err in dismissing appellants' Tucker Act claim because on the

day they filed the Tucker Act claim a complaint based on the same operative facts and seeking the same relief was pending in the United States District Court for the Middle District of Pennsylvania. In addition, because the district court lacks jurisdiction over Tucker Act claims exceeding $ 10,000, the refusal of the Court of Federal Claims to transfer the case under 28 U.S.C. § 1631 was not an abuse of discretion. We therefore **[*2]** *affirm*.

*BACKGROUND*

On June 3, 1991, the United States government filed a Qui Tam action in the United States District Court for the Middle District of Pennsylvania pursuant to the federal forfeiture laws against the real property located at 205 Daystrom Avenue, alleging that the property had been used by Mancus in furtherance of his cocaine distribution. On the same day, the government obtained an *ex parte* order from the district court authorizing the United States to seize the property. Following the Supreme Court's ruling in a different case that such *ex parte* seizures violate the Fifth Amendment's Due Process Clause, the district court, in January 1995, returned possession of the property to Newton Lake, the record owner, pending the outcome of the forfeiture action.

On September 21, 1995, Newton Lake filed a suit under the Federal Tort Claims Act (the "FTCA") in the same district court claiming damages arising from the government's temporary possession of the property following the unconstitutional seizure. That suit was still

pending in the district court when appellants filed this Tucker Act claim in the Court of Federal Claims alleging damages from the same [*3] seizure of the same property.

On July 17, 1997, the Court of Federal Claims dismissed appellants' Tucker Act claim for lack of jurisdiction pursuant to 28 U.S.C. § 1500, which prohibits filing an action in the Court of Federal Claims when another action on the same claim is co-pending in another court. Mancus moved for reconsideration on the basis that he personally did not have any other claim pending at the time of the filing of the Tucker Act claim because the FTCA action named only Newton Lake. Mancus requested that the Court of Federal Claims re-instate the claim as to him or, in the alternative, that the Court of Federal Claims transfer his Tucker Act claim to the district court. On July 23, 1997, the Court of Federal Claims denied the motion for reconsideration. The Court of Federal Claims cited the district court's finding in the forfeiture action, *United States v. Premises Known as 205 Daystrom Ave.*, Civ. No. 91-735 (M.D. Pa. Aug. 2, 1996), that Newton Lake and Mancus were "alter egos." From this, the Court of Federal Claims concluded that the FTCA suit by Newton Lake was effectively a claim by Mancus pending in another court and that, therefore, the dismissal of the [*4] Tucker Act claim for lack of jurisdiction was proper with respect to both Mancus and Newton Lake. Further, the Court of Federal Claims declined to transfer the case to the district court.

Appellants appeal to this court arguing that the Court of Federal Claims erred in dismissing their Tucker Act claim with respect to Mancus and abused its discretion in not transferring his claim to the district court under 28 U.S.C. § 1631.

*DISCUSSION*

Because Court of Federal Claims jurisdiction is purely a question of law, this court reviews de novo the application by the Court of Federal Claims of 28 U.S.C. § 1500, which restricts the jurisdiction of that court. *See Richmond, Fredricksburg & Potomac R.R. Co. v. United States*, 75 F.3d 648, 653 (Fed. Cir. 1996). A decision by the Court of Federal Claims concerning whether to transfer a claim to another court pursuant to 28 U.S.C. § 1631, however, is discretionary and is reviewed on appeal for abuse of discretion. *See LeBlanc v. United States*, 50 F.3d 1025, 1031 (Fed. Cir. 1995). If, however, the court to which transfer is sought would lack jurisdiction, the

case may not be transferred. *See* 28 U.S.C. § 1631 (1994). The question [*5] of whether such a transferee court would have jurisdiction is also a question of law subject to our *de novo* review.

I.

Section 1500 prohibits the Court of Federal Claims from exercising jurisdiction over "any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit . . . against the United States." 28 U.S.C. § 1500 (1994). The determination of whether the plaintiff has another suit based on the same claim pending in another court is made as of the time of the filing of the claim with the Court of Federal Claims. *See UNR Indus. v. United States*, 962 F.2d 1013, 1021 (Fed. Cir. 1992) (in banc), *aff'd sub nom. Keene Corp. v. United States*, 508 U.S. 200, 124 L. Ed. 2d 118, 113 S. Ct. 2035 (1993). If the Court of Federal Claims concludes that the plaintiff had another suit, based on the same operative facts and seeking the same relief as those of the claim filed in the Court of Federal Claims, pending in another court at the time of the filing in the Court of Federal Claims, then the Court of Federal Claims must dismiss for lack of jurisdiction. *See Lovelades Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994) [*6] (in banc).

Appellants do not dispute that the FTCA claim and the Tucker Act claim were based on the same operative facts and requested essentially the same relief. They also do not dispute the authority of the Court of Federal Claims to adopt a finding made by the district court. Instead, they argue that the Court of Federal Claims erroneously interpreted the finding of the district court. They argue that Mancus is not the same plaintiff as Newton Lake or, in other words, that a claim by Mancus is not the same as a claim by Newton Lake. Appellants base their arguments on an interpretation of the district court's findings in the forfeiture action that Mancus, and not Newton Lake, was the true owner of the property in question. They argue that the district court's statement that Newton Lake and Mancus are "alter egos" should not have been literally interpreted by the Court of Federal Claims.

As support for their interpretation of the district court's findings, appellants point to the decision by the United States Court of Appeals for the Third Circuit in Newton Lake's appeal from the district court's decision in the forfeiture action. The Third Circuit dismissed Newton

Lake's appeal, **[\*7]** concluding that Newton Lake lacked Article III standing. The Third Circuit reasoned Newton Lake had not been injured-in-fact because Newton Lake was only a "straw owner" with no real ownership interest in Mancus' property. Appellants argue here that the conclusion by the Third Circuit that Newton Lake lacked standing supports their argument that the Court of Federal Claims erred in its conclusion that Newton Lake and Mancus were the same plaintiff. They further argue that the decisions by the Third Circuit and the Court of Federal Claims, in addition to being inconsistent, have left Mancus without a forum in which to pursue his claim.

We find no error in the adoption by the Court of Federal Claims of the district court's conclusion that Newton Lake and Mancus are "alter egos." After a full trial on the merits of the forfeiture action, the district court made a number of detailed findings of fact, including that Newton Lake and Mancus are "alter egos." This finding was not disturbed on review by the Third Circuit. *See United States v. Premises Known as 205 Daystrom Ave.*, No. 96-7585, slip op. at 8 n.2 (3d Cir. July 3, 1997).

The scope of the inquiry under section 1500 is very **[\*8]** limited: once the Court of Federal Claims determined that Newton Lake and Mancus were "alter egos," the Court of Federal Claims could only conclude that appellants had the same claim pending in another court at the time of the filing of their Tucker Act claim and that, therefore, section 1500 denied the Court of Federal Claims jurisdiction. The Court of Federal Claims did not have the discretion or the authority to carry its inquiry any further. "Principles of equity do not support finding jurisdiction exists. A court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." *UNR Indus.*, 962 F.2d at 1020 (quoting *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1565 (Fed. Cir. 1988)). Thus, the Court of Federal Claims could consider neither whether its dismissal for lack of jurisdiction would be "consistent" with the Third

Circuit's conclusion concerning Newton Lake's lack of standing in the forfeiture action nor whether it would be fair or equitable to dismiss the Tucker Act claim. We therefore reject the appellants' arguments.

The result here is entirely consistent with the purpose of section 1500: to prevent claimants from filing **[\*9]** the same suit against the United States in different courts. This is exactly what appellants attempted to do. Before filing a claim against the United States, claimants must choose where to bring the claim. Newton Lake, an alter ego of Mancus, chose to file suit in the district court, and then later, while that suit was still pending, appellants chose to file the same claim in the Court of Federal Claims. The resulting dismissal by the Court of Federal Claims should have been expected by appellants.

II.

As to the request to transfer Mancus' Tucker Act claim to the district court pursuant to 28 U.S.C. § 1631, appellants present no arguments supporting a conclusion by this court that the Court of Federal Claims abused its discretion in not transferring the claim. Indeed, the Court of Federal Claims was legally precluded from doing so. Section 1631 limits transfers to only those courts in which the action could have originally been brought at the time it was filed. Mancus could not have originally brought his Tucker Act claim in the district court because it was in excess of $ 10,000 and therefore beyond the Tucker Act jurisdiction of the district court. *See* 28 U.S.C. § 1346(a)(2) **[\*10]** (1994) (limiting the jurisdiction of the district courts over claims against the United States to claims for $ 10,000 or less). Further, Mancus could not have brought his claim in the district court under the FTCA at the time appellants filed the Tucker Act claim because the statute of limitations for filing an FTCA action had already expired. Because appellants failed to show that the Court of Federal Claims could have lawfully transferred the claim to the district court, the refusal of the Court of Federal Claims to do so, by definition, cannot be an abuse of discretion.



**JORGE TAYLOR, Plaintiff-Appellant, v. UNITED STATES PATENT AND
TRADEMARK OFFICE, Defendant-Appellee.**

**2010-1165**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**385 Fed. Appx. 980; 2010 U.S. App. LEXIS 13894**

**July 8, 2010, Decided**

**NOTICE:** THIS DECISION WAS ISSUED AS
UNPUBLISHED OR NONPRECEDENTIAL AND
MAY NOT BE CITED AS PRECEDENT. PLEASE
REFER TO FEDERAL RULES OF APPELLATE
PROCEDURE RULE 32.1 GOVERNING THE
CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]
    Appeal from the United States District Court for the
Southern District of New York in No. 08-CV-8634,
Judge Loretta A. Preska.
Taylor v. United States PTO, 339 Fed. Appx. 995, 2009
U.S. App. LEXIS 17580 (Fed. Cir., 2009)

**DISPOSITION:** AFFIRMED.

**COUNSEL:** JORGE TAYLOR, of New York, New
York, Pro se.

RAYMOND T. CHEN, Solicitor, Office of the Solicitor,
United States Patent and Trademark Office, of Arlington,
Virginia, for the Director of the United States Patent and
Trademark Office. With him on the brief were THOMAS
W. KRAUSE and JOSEPH G. PICCOLO, Associate
Solicitors.

**JUDGES:** Before RADER, Chief Judge, LOURIE and
BRYSON, Circuit Judges.

**OPINION**

[*980] PER CURIAM.

DECISION

    Appellant Jorge Taylor challenges the December 8,
2009, judgment of the United States District Court for the
Southern District of New York. Pursuant to this court's
mandate resolving Mr. Taylor's prior appeal, *Taylor v.
U.S. Patent & Trademark Office,* 339 Fed. Appx. 995
(Fed. Cir. 2009), the district court directed the United
States Patent and Trademark Office ("PTO") to refund
Mr. Taylor's $ 1030 patent maintenance fee and, upon
receipt of payment of all outstanding maintenance fees, to
reinstate Mr. Taylor's patent, U.S. Patent No. 5,178,701.
In this appeal, Mr. Taylor seeks to re-open the
proceedings to adjudicate his original request, in the
complaint, to [**2] be awarded $ 1 billion in damages
from the PTO. Because the district court properly
implemented this court's mandate, we *affirm.*

    [*981] BACKGROUND

    On July 8, 2008, Mr. Taylor filed a complaint against
the PTO, alleging that in 2001 the PTO had wrongfully
accepted his fee of $ 1030 to maintain his patent, but then
allowed his patent to expire without notifying him
because his payment was deficient by $ 10. Mr. Taylor's
complaint sought reimbursement of his $ 1030, with
interest, and additional monetary damages in the amount
of $ 1 billion, which was his estimate of the value of his
intellectual property.

On October 9, 2008, the district court dismissed the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. The court found that PTO regulations do not provide a waiver of petition filing fees for indigent applicants, and that Mr. Taylor was therefore barred from challenging the expiration of his patent because he failed to pay the required $ 200 filing fee. The court further concluded that Mr. Taylor had not shown that the PTO's actions were "arbitrary and capricious" and thus had failed to show that he was entitled to relief under the Administrative **[\*\*3]** Procedure Act.

On appeal from that decision, Mr. Taylor argued that the PTO violated the due process clause of the Fifth Amendment to the Constitution by taking "$ 1030 plus the patent protection . . . without informing plaintiff." Mr. Taylor further asserted that he "only asked for $ 1030 with interest and redress for [the PTO's] negligence as to the expiration of the patent for lack of payment." In his reply brief, Mr. Taylor noted that, while the PTO had returned his $ 1030, he "will not accept it without the proper bank interest." He also contended that "the USPTO expired the patent unlawfully and held the $ 1030 for 8 years to cash-in the interest thereof, plus whatever cash they may have gotten for their purposive-error (Many [corporations] are selling the invention without Mr. Taylor's permission, thanks to the USPTO)." Mr. Taylor further requested "the relief herein [asked] for and in the original petition."

This court reversed the district court's judgment. We held that the PTO had acted arbitrarily and capriciously in accepting Mr. Taylor's deficient payment, while simultaneously allowing his patent to expire without notifying him pursuant to section 2531 of the Manual of Patent Examining Procedure **[\*\*4]** that his payment was insufficient. *Taylor,* 339 Fed. Appx. at 998. This court noted with approval that the PTO had unilaterally decided to refund Mr. Taylor's $ 1030 payment. With respect to Mr. Taylor's patent, we further held:

> [T]he appropriate relief in this case is equitable. . . . In this case, equity would counsel that the PTO should reinstate Mr. Taylor's patent upon receipt of his payment for all outstanding maintenance fees. This relief will remedy, to this court's best estimation, the PTO's arbitrary and capricious actions.

*Id.* at 999. We therefore remanded to the district court "with instructions to enter judgment in accordance with this opinion." *Id.*

Upon receipt of the mandate, the district court entered an order directing the PTO to refund Mr. Taylor's payment of $ 1030 and to reinstate Mr. Taylor's patent upon receipt of payment for all outstanding maintenance fees. Mr. Taylor now appeals on the ground that the district court failed on remand to consider the merits of his claim for $ 1 billion in monetary relief.

DISCUSSION

The "mandate rule" requires a district court to "follow an appellate decree as the law of the case." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,* 576 F.3d 1348, 1356 (Fed. Cir. 2009), **[\*\*5]** citing *Sibbald v. United States,* 37 U.S. 488, 492, 9 **[\*982]** L. Ed. 1167 (1838). In addition, the rule "forecloses reconsideration of issues implicitly or explicitly decided on appeal." *Amando v. Microsoft Corp.,* 517 F.3d 1353, 1364 (Fed. Cir. 2008). Determining what issues are decided on appeal requires consideration of the scope of the judgment appealed from, and "[a]n issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived." *Engel Indus., Inc. v. Lockformer Co.,* 166 F.3d 1379, 1382-83 (Fed. Cir. 1999).

In this case, the district court's original judgment dismissed Mr. Taylor's claims in their entirety, as the court held that Mr. Taylor had failed to establish entitlement to any type of relief. Thus, the issue of Mr. Taylor's entitlement to $ 1 billion in monetary relief was plainly within the scope of the district court's original judgment from which he took his prior appeal. Mr. Taylor was therefore obligated to raise that issue in his opening brief on appeal if he wished to preserve that issue. However, his opening brief in that appeal contained no reference to the claimed $ 1 billion in damages, nor did it **[\*\*6]** present any arguments in support of Mr. Taylor's claim of right to that remedy. Rather, his opening brief focused exclusively on recovering the "$ 1030 plus the patent protection" and stated that he "only asked for $ 1030 with interest and redress for [the PTO's] negligence as to the expiration of the patent." Mr. Taylor's reply brief in that case noted, in passing, that many large corporations "are selling the invention without Mr. Taylor's permission." However, that vague

statement did not constitute an argument that the PTO should be required to pay damages to Mr. Taylor (let alone $ 1 billion in damages), nor did it address whether the district court even possessed the power to award such relief. The reply brief's plea for the relief requested "herein . . . and in the original petition" is likewise too ambiguous to constitute an argument that Mr. Taylor should be awarded $ 1 billion in damages. Mr. Taylor thus waived his right to argue his damages claim by failing to raise the issue in his initial appeal.

As in *Engel Industries,* Mr. Taylor's decision not to present arguments in support of his claim for $ 1 billion in monetary relief--an issue subsumed within the issue of his entitlement **[**7]** to relief--does not alter the fact that his claim was disposed of by the district court's original dismissal order and thus by this court's mandate on appeal. Although a district court may act on matters left open by the mandate, it "cannot give relief beyond the scope of that mandate." *Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 951 (Fed. Cir. 1997).

In our prior opinion, we noted that Mr. Taylor had broadly requested any relief deemed appropriate, yet we explicitly determined that "the appropriate relief in this case is equitable." *Taylor,* 339 Fed. Appx. at 999 (Fed. Cir. 2009). Specifically, we stated that Mr. Taylor's patent should be reinstated upon receipt of his payment for all outstanding maintenance fees--a remedy that did not entail any award of damages. Moreover, we held that "[t]his [equitable] relief will remedy . . . the PTO's arbitrary and capricious actions." *Id.* In concluding that the equitable relief would remedy the PTO's improper actions, we implicitly concluded that no additional relief was necessary or appropriate. *See Smith Int'l, Inc. v. Hughes Tool Co.* 759 F.2d 1572, 1577 (Fed. Cir. 1985) (mandate rule applies to issues "decided by necessary

implication as well **[**8]** as those decided explicitly"). As such, the decision on Mr. Taylor's $ 1 billion damages claim has become final, and he is not entitled to any further proceedings in pursuit of that claim.

Contrary to Mr. Taylor's argument that "Reverse and Remand means that the entire complaint is back at the Trial Court **[*983]** calendar for further proceedings of the complaint," our mandate was specific and restrictive. We ordered a remand for the purpose of entering judgment, not for reconsideration of the complaint or for additional proceedings on Mr. Taylor's claims. We left open no issues for the district court to resolve. Thus, while the trial court was permitted to enter judgment granting Mr. Taylor equitable relief (and a refund of his patent maintenance fee), as it proceeded to do, it was barred under the mandate rule from reexamining Mr. Taylor's claims on their merits or awarding any relief beyond the limited scope permitted by the mandate. The district court's order of December 8, 2009, was therefore clearly in accordance with our mandate.

If Mr. Taylor was dissatisfied with the relief accorded by this court's earlier opinion, he could have petitioned for rehearing or moved to recall the mandate. **[**9]** *See* James Wm. Moore et al., *Moore's Federal Practice* P 134.23[3] (3d ed. 1997). Because he failed to seek any such relief in this court at the time of the initial appeal, he cannot now challenge the district court's compliance with our instructions on remand. Accordingly, we uphold the district court's December 8, 2009, order directing the PTO to refund Mr. Taylor's $ 1030 patent maintenance fee and to reinstate Mr. Taylor's patent upon receipt of his payment of all outstanding maintenance fees, but granting no further relief.

**AFFIRMED**

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on | Sep 1, 2015 |
by:

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
   (by email or CM/ECF)

| Russell A. Semmel | | /s/ Russell A. Semmel |
Name of Counsel                              Signature of Counsel

Law Firm | NEVILLE PETERSON LLP |

Address | One Exchange Plaza, 55 Broadway, Suite 2602 |

City, State, ZIP | New York, NY 10006 |

Telephone Number | 212-635-2730 |

FAX Number | 212-635-2734 |

E-mail Address | rsemmel@npwny.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.